United States of America v. Figueroa. We have counsel present by telephone. Judge Wiener, Judge Clifton, and I, Judge Reinhart, are here. I guess we start with Ms. Mossman. Yes. Good morning, Your Honors, and may it please the Court. I'm the Court-Appointed Appellate Attorney representing the defendant, Appellant Maria Figueroa, and I want to thank you for Ms. Mossman, maybe in exchange you can help us. We gave you 20 minutes aside for this case, which is done by the clerk's office on some mysterious system that we can never figure out because it has very little to do, apparently, with the length of time that the case requires. So this is sort of overtimed. I think this is really a 10-minute preside case, but we won't be rigid about it, but don't feel that because there's 20 minutes there's any reason to go anywhere near that maximum. Okay. Yes, I understand. So the appellate brief presents five issues today. Federal Rules of Criminal Procedure, Rule 32, Issue Accepting Entrapment, 18 U.S.C. Rule 3553, Minor Role Overstatement of Criminal History. However, there is a cross appeal in this matter, and if the Court prefers, I am prepared to address the cross appeal first. That's fine. You want the cross appeal first? Whichever way you'd like. As long as you do them both. Okay. Well, actually, I'll start with your defendant's opening brief regarding the Federal Rule of Criminal Procedure, Rule 32, which is concerned with unresolved objections to the pre-sentence report, specifically in this case, accepting entrapment, a provision that this was never ruled on. The review under this matter is de novo review, and under Ninth Circuit prevailing laws for compliance, it's required under Rule 32. The government's position is that the district court ruled on the sentencing entrapment when the court said that the defendant and her client received the minimum statutory sentence. Yes, Your Honor. So if you were to win anything, what would you accomplish? Well, specifically with the sentencing entrapment, the court didn't rule on a different statutory penalty provision, and under that provision, the mandatory minimum is five years. It's that provision that she is entitled to the sentencing entrapment under this different penalty provision. Furthermore, in the overstatement of criminal history points, I had provided the court with a new citation letter regarding Blakely, and that would go to overstatement of criminal history points. I would submit, Your Honor, would affect the issue of probation and three history points, and if the court grants the government's cross-appeal, that would impact the re-sentencing. She would be at a change of range of one. I'm sorry, of two. But assuming that the cross-appeal is not granted, which of your would rule on the issue of sentencing entrapment that would apply to a different penalty provision, she would receive a five-year mandatory minimum. And that's critical here. And it's our position, Your Honor, that with the government's side of the ruling, it's not a ruling at all. Number one, I still object that this transcript is not correct. The government is still trying to correct the transcript. That would only affect the issue of a departure. It doesn't affect the issue of a different statutory penalty provision. And number two, the government says when the court, the district court stated on the record that the defendant or co-defendant was ready and willing to enter into the transaction, that does not reach the issue of sentencing entrapment. It certainly reaches an issue of the omission of sentencing entrapment. And furthermore, defense counsel was still talking to the court, was still arguing to the court after the court, the district court, made a statement on the record that these two individuals were ready and willing. Number two, is that ready and willing issue is available at Defendant Expert Record tab five, page three. Of course, they're ready and willing under sentencing entrapment to engage in the transaction, but these individuals under this back pattern were never ready. There's a correction to our palace opening brief. They were never ready to do what? They were never ready to enter into this transaction for 10 pounds. They were never ready. They were ready, and I think there had been a discussion of something even larger than that, but they were ready to enter into it at a certain level. I thought that was what was charged. They were charged with the 10 pounds, but even the government cited Ms. Figueroa stating that she was upset with how the quality of the methamphetamine was being engaged in the transaction. Well, that doesn't suggest an inclination not to participate in a criminal transaction. That suggests that she thought it should have been even better stuff. Somehow that doesn't strike me as entrapment. I have the self-position that readiness goes to the readiness to engage, yes, but also the quality, and certainly on sentencing entrapment, quantity is at issue here. That is sentencing entrapment. It's that you weren't ready to engage in the quantity that the government was enforcing upon you, and it's our position that they had difficulty that day even coming up with the 10 pounds, and that's very apparent from the record. It wasn't a lack of willingness on her part. It was an inability to produce the quantity in question. They were concerned about even being able to get it from their source initially, and they weren't ready. They had never dealt with that kind of, that Ms. Figueroa had never dealt in that type of quantity before, although the government's trying to urge this court that she's a hardcore violator of narcotic fraud. Well, yeah, she's willing to sell more if she could get it, but she couldn't get it. That doesn't suggest a lack of willingness. But willingness is not part of entrapment. We're admitting that there was a willingness to engage in the sentencing entrapment, but she was never ready and willing to really engage in that type of quantity. That's the entrapment. Well, she was plenty willing. I take it you accept the willingness, the question is ready, as incapable. Incapable, and also really up to the very point of the transaction, really capable of entering into this type of quantity. Her prior conviction was for marijuana. She was dealing in street-level amounts. The prior record shows it was only 16.7 grams, 7 ounces of marijuana. The government's trying to express in character as a hardcore violator of narcotic fraud, and that's not in the record. That's not in the police report, which is what the government has provided in their excerpts of records. It was my understanding, and I flipped through the papers and can't find it, but it was my understanding that the offense level is calculated based on the actual weight of the methamphetamine involved. Well, if that's correct, then what are we talking about? Because they have capacity if that's the weight they have. Well, the certainty is trapped, it's the entrapment to get to that level. But she's got that quantity, so she's capable, and she's willing. What's left? It's the urging, the inducements, the constant pressure. That's the entrapment. The fact that she's admitting that she was engaged in this type of crime, but she's saying that she was not. It was through the government pressure that the quantity became this type, this amount, which affected her steps. And it's our position on the federal rule. Excuse me, you switched from ready to willing. You're not saying that, yes, she was ready, but she had to be persuaded improperly. To reach this amount. That seems to be a willing. You first, I thought, told Judge Clifton that willing wasn't the problem, ready was. Now it sounds like ready is not the problem, in your mind, willing is. Both of them are an issue when it comes to the quantity. That's what our position is. They were ready and willing to engage in the transaction, but not this amount. That's the argument under sentencing manipulation, or sentencing entrapment, under this Ninth Circuit. And that goes to Stouffer. We've cited to this case in our opening brief. Certainly they're willing and ready to engage in a drug transaction, but it's the amount that becomes the entrapment and the manipulation. And if the court has any other questions, I could proceed under this. No, go ahead, please. I would like to just correctly just address the issues of the government pre-sentence confinement. This is again under de novo review. And I'm not sure, I've submitted authorities in this case to give this panel,  what these facilities were like and the conditions of these two facilities. It's certainly in the record that the district court knew and was aware of problems in these state-run facilities. That's very apparent from the record. He actually expressed this in the hearing for substitution of counsel hearing held on November 6, 2001. And that's at government, that's at our supplemental excerpts of record, tab one. The court says that he's very aware, he knows that there's problems. And the interesting thing was that defense counsel for Mr. Garroa was also his sentencing counsel. So the sentencing counsel was very aware that the court knew about the problems of confinement. The government states, does not even give clear arguments why this departure should not be afforded, Mr. Garroa. They've only said that the issue was highly infrequent. And we've, and appellate feel that we've addressed this issue. It's an issue of first impression in the Ninth Circuit. We've offered specific and general objections to the reasons for her being granted this departure. What is it in the record that justifies factually the departure? Or implicitly the conclusion that the conditions in those facilities were so bad as to justify departure? In the record, including the appellate, what was provided at the appellate level, was the conditions of, harsh conditions that she was, there was no ability to. Exactly what in the record? I should make my question clear. We're supposed to review, based on the record, a factual finding which is of the nature that downward departure is justified because of the terrible conditions. What in the record is there documenting the terrible conditions? Her inability to meet with counsel. No, no, no, stop. Again, I'm not asking for a generalized conclusory statement as to what was bad. What in the record supports the propositions you're offering? Her submissions to the court about the conditions, Your Honor. What was the form of her submission to the court? She sent a declaration or something? No, she stated that in her position papers. So it's her, the record or the finding depends upon what she said in the position papers she submitted at the time of sentencing. And the court's awareness. The court has... The court's awareness doesn't help me because that's not put as part of the record. It is in the record. We're supposed to be conducting a review. It is in the record. No. The court was aware of the fact. I can't look into Judge Hatter's mind and see what's there. So I don't know what to do with that. It's stated in the record. She's aware that they're having difficulty meeting with counsel and that she's having to get up early and come back very, very late. Getting up very early and very late. That is in the record. Number two, the fact that the court, Ms. Figueroa, submitted her individualized personal subjective experiences with this hardship. No law library. That that was addressed in the United States as Francis with the government site. Which is a valid reason to find harsh conditions. Well, exactly what was she going to do with the law library? She had counsel. Well, I've yet to meet a client that isn't toiling away in the law library. Does she read English? That, if Francis said that, that's not a factor. The fact that she doesn't... She does not read English, Your Honor, to directly answer your question. Counsel, what authority does the judge have to review what the conditions are at a prison and under the sentencing guidelines make his, craft his sentence to fit that? In other words, does he look at all the jails or all the places where they incarcerate people and grade them on an ABC and then decide a particular sentence fits a certain institution? Because where people are assigned is not necessarily where the judge sends them. That's done by the Bureau of Prisons. I have difficulty understanding how he could raise or lower the sentence depending on the conditions of that particular institution. Now, if I'm wrong about that, please correct me. Well, Your Honor, I believe that, number one, these particular institutions are specific institutions that we're dealing with, not all state-run institutions. That's what takes this out of the heartland. Because we're dealing specifically with Kern County and San Bernardino. Number two, if I can remember your question, you had a number of them. The review is de novo. And so if you're willing to, you can review this case afresh here. And if you could just repeat part of the question that I have not answered, Your Honor. So we're dealing specifically with Kern County and San Bernardino. That's it. We're not addressing all state-run facilities. That might actually be, it's the U.S. Marshal Service that is under the statutory custody and transfer of these pretrial detention individuals. It's not the Bureau of Prisons. That's another thing that you've mentioned, Your Honor. No, but the Bureau of Prisons deals with the institution itself. The Marshals are only the vehicle how people get back and forth from those institutions. Actually, Your Honor, under Section 408, United States Title 18 U.S.D. Code, Section 408, the temporary safekeeping of federal offenders is by the U.S. Marshal as well. If they're under their custody and their transfer. That's correct. Yes. But, I mean, how would he know where the institution, does he look at each of the institutions before he sentences somebody and then crafts a sentence that fits that institution? If the institution is not very clean, you get a low sentence. If it's very clean, you get a greater sentence? Well, this is the, you know, the requirement for the defendant under her burden of persuasion is the preponderance of the evidence. She has, the individual defendant has to submit certain factors to at least meet that. So our by position is... But didn't the Sentencing Commission set up certain rules for departing from the sentence that is supposed to be given us to a certain thing by the various numbers and where they fit into the picture of what they're going to sentence a person to depending on his activities and what they have found and whether he pleads guilty or not guilty, his age, his mental or physical conditions? Yes. And here you're saying that this is all based on the hygienic facilities or whatever it might be at a particular institution and therefore you give less or greater sentence depending on what those facilities represent? Well, I mean... If I'm saying it wrong, please correct me. If they're qualitatively different, I think that's the issue. If it's qualitatively different than what the federal detention center provides, that's the benchmark that one starts to work with. Um, you know, this is actually... This is an unmentioned departure in the sentencing guidelines, but it's not a departure that is impermissible in other circuits, Your Honor. This is the one of first impression in this circuit. And I believe I'm running out of time. If I could preserve some of my time in the support of any other questions. Thank you, Catherine. Okay. All right. We'll hear from the government. May it please the court. John Owens for the United States. I'd like to quickly begin with the sentencing and trap argument, if that's okay. And then go to the government's cross field. Beginning with the defendant's sentencing and trap argument, defense counsel at the hearing put on extensive argument and evidence that the sentence is a trap. And Judge Hatter rejects that evidence, rejects that argument. And I would refer the court to government's extradition record, page 172, in which that's the corrected transcript, which the prosecutor in this case was me, asked the court, the court did not grant sentencing and entrapment. And the district court judge said that's correct, turned down all except for the quantity issue and then the conditions of confinement. And then he went on to say that he understood that he had the discretion to depart, but chose not to do so in this case. The review of the record showed that the district court considered the argument of sentencing and understood he could depart and declined to do so. And under United States v. Roth, that decision by the district court is now unreviewable. This court lacks the jurisdiction to review that decision. So I think that kind of ends the sentencing and entrapment issue in this case. And if there are any further questions on that, otherwise I would move on to the cross appeal in this case. Dealing with the cross appeal. In this case, the government believes, as explained in this brief, that the district court erred in three separate ways. So before I get to the ways, can you tell me why we should not conclude that the government waived this point under United States v. Britain, which says that the government waives its challenge to a downward departure on prison conditions if it fails to object below? Well, Your Honor, the government did object below. All right, where did the government object below? There are two different points. One is whether it's appropriate to depart for this reason. And two is the extent of the departure. Could you tell me as to each of those where the government's objection is in the record? As the first question, Your Honor, which is whether a departure is appropriate in this case. No, whether a departure on these grounds is an appropriate basis for a departure. Well, Your Honor, during the hearing, when the defendant raised the issue about harsh conditions, I specifically said on the record that I would direct the court's attention to page 164 of the government section of the record. And I say, one thing I did not mention in my papers, I'd like to do so now. The defendant makes the argument that current San Bernardino County jails are very bad, and so forth. I'd like to point out, looking at the defendant's record while at San Bernardino, that there are certain forces. So I objected right there, and the district court understood that I objected. Yes, he then said, I'm not saying those are facilities I'd want to spend a weekend at. Yes. I'm also indicating the facilities maybe aren't as bad as the defendant's papers suggest. Yes. Now, did you in there say to the judge that inadequate or improper prison conditions are not a ground for a downward departure? No, I did not argue to the court that it was an impermissible ground. That is correct, Your Honor. Okay. So that leaves us with the question of whether you objected to the extent of the departure. I would disagree with that, Your Honor. The fact is that I'm not arguing today that the government is saying that it's an impermissible grounds for departure, period. Okay. All right. You're only arguing that in this case, they didn't establish that the conditions were bad enough. Correct. Okay. And your answer to their contention that the conditions were really bad is that they're not really so bad. Well, I would make a couple arguments on that point, Your Honor. The first is to establish that there were these harsh conditions. The defendant put forth five opportunities that she claimed that she lost by being housed in the San Bernardino and Kern County facilities. Your answer wasn't that the things that she alleged were not sufficient reason. You said they're not as bad as she alleges. Well, two things, Your Honor. When I made that argument, I'm saying that the facilities are not as bad as the defendant suggests. And in other words, they're not overduly harsh that require the downward departure. I think there's two problems with the defendant, with the district court's theory here, or what it did. But if they were as bad as she suggested, then it would warrant a departure. No, I disagree with that, Your Honor. Well, now I'm just asking about what your argument was to the district court. No, it was both things. It was, one, the factual record didn't support her allegation. And two, the allegations did not constitute harsh conditions. She said that the conditions were so harsh as to require a downward departure. What I argue here, the facilities aren't as bad as the defendant's paper suggests. They aren't as harsh as to require a downward departure. Okay. All right. Do you want to go on with your argument? Yes, Your Honor. First, the district court has these five opportunities that the defendant alleged. That there was no law library, no well-being classes, and I think that's referring to the yoga courses and the art courses or art classes that she took. No drug classes, which I think is drug treatment, no work opportunities, and she had to get up early in the morning and was returned late at night when she went to prison or when she went to meet with her attorney. Even assuming that those five allegations are true, and there are problems with some of those allegations in this case, that does not constitute harsh conditions. The cases that talk about harsh conditions are cases like Francis and Carter. And if you look at those cases, they paint a very different picture than the picture in this case. In Francis, for example, the defendant put on numerous witnesses who testified that there was basically a band of gang members that controlled the prison, attacked people without impunity, and the prison guard simply stood by and let this happen. And in Carter, the defendant was kept in a Dominican Republic prison, a four-by-eight cell with several other prisoners with no running water, no light, and the only toilet in the room was actually a hole in the floor. Now, those kinds of cases, courts have recognized, could constitute harsh conditions. There's nothing in the record in this case at all that comes even remotely close to what was depicted in those two cases. And even if the court were to take judicial notice of the materials that defense counsel has submitted on appeal, there are the two grand jury reports for the Kern County facilities, and there's the newspaper article for the San Bernardino Sun. At the Kern County facilities, one of the reports, which is, I believe, in 1998 to 1999, discusses that there is inadequate exercise space at the Kern County facilities. And the San Bernardino Sun article talks about how, at one point, there were problems with overcrowding, but that overcrowding actually was eased, and then in 2004, there were more overcrowding problems. Well, the defense was kept in the San Bernardino facility, according to the marshal's records. In 2001, there's nothing in the record to suggest that these overcrowding problems that are discussed in this newspaper article in 2004 were even present when she was at that facility. But third, I'd like to point out that the record does not support all of the allegations she made to the district court. The defendant contended that she did not have a work opportunity in the county facility. But if you look at her sentencing filing, which is at government's sealed executive record, page 23, you'll see that there was a letter from the sheriff of San Bernardino stating that she did have a job. And at the law library, I believe Judge Clifton had a question about that. The defendant cannot read or write English, and she had an attorney. So it's unclear why the lack of having a library, assuming that's correct, how that really adversely affected her in this case. So at the end of the day, you're really faced with three conditions. No well-being classes. Again, I think that's the yoga course that she's talking about. No drug classes, presumably drug treatment. And she had to get up early in the morning and was returned late to prison when she met with her attorney. Those three conditions, even if true, do not come close to the facts laid out in cases like Francis Hardy. And Judge Whitehart, to get back to an earlier question you had, there's a question about the extent of the departure. Let's assume that it was correct to depart downward in this case. The question is, how much? How far of a departure? Now, there is case law from other circuits that seems to suggest that if the district court is not on notice that the government is concerned about the extent of the departure, you would review for plain error. The government's contention here is that Judge Hatter knew full well that the government was not satisfied with the departure of any grounds on this issue. Certainly one that happens in this case. But even if the standards were plain error, the government believes that the district court blamed the error. In this case, the defendant spent eight months at these facilities. In exchange for that, she received a minimum of a 15-month reduction in her sentence. Before the downward departure, the defendant faced a sentence of 135 to 168 months. Because of the departure, she received 120 months. So the departure in this case was that of a minimum 15 months and possibly 48 months in this case. In Brington, which was overruled on other grounds, the court actually was talking about the same district court judge, Judge Hatter, and basically said that departures of a great ratio like this are not supported by the guidelines and not approved. Now, the ratio in Brington was arguably higher than the ratio in this case, but nevertheless, it is an extreme ratio, almost 2 to 1 ratio at a minimum, that simply does not fit the facts of this case. Now, there are other issues on appeal. The government believes that they're covered in the brief. Unless the court has any further questions, the government would submit at this time. Do you have a position on whether there's any reason to await Booker and Fanfan in this case? Your Honor, I think it probably would make sense to do that. There was a rumor going around that today was going to be the day. I checked the computer. It's not. And so I think it would make sense because the government's position, as you know, is that the guidelines are not invalidated by the Blakely decision. But if they are invalidated, and if the Supreme Court throws out the guidelines completely, does not take the Ninth Circuit's ammaline position, but just tosses them completely, well, then the case needs to be remanded for resentencing because all of these departures and minor role and overstatements, that could all be out the window. So I don't see the harm in holding it. There's no prejudice to the defendant. She's facing a 10-year mandatory minimum sentence, and I'm hoping the Supreme Court will decide it before then. Yeah, so are we. All right. Thank you very much, counsel. Thank you. Ms. Mossman? Your Honor, I do have a few points to make. Briefly, I do agree that we should wait for the judgment until Stanton and Booker decide that it doesn't impact on her ability to be reset if that has to happen. And number two, regarding the entrapment issue, the government urging you to take the position that the district court ruled on this issue, even the government attempts to correct the brief in its answering brief, an opening brief, it just talks about departures. It doesn't reach the issue of different statutory penalty provisions. Even the corrected brief doesn't do that. Number two, regarding the departures for confinement, in United States v. Carter, they had seven transcripts of witnesses. Ms. Figueroa was only afforded a few minutes. In United States v. Carter, there were two re-sentencing hearings that were afforded these individuals, these defendants, to develop the record. And this is why you get these extensive types of records. I can assure you that Ms. Figueroa, if she was afforded the same opportunity, would have supported the record even further. But based on the record as it is, we feel that this departure is warranted. We're not asking the court to take judicial notice of the grand jury report. These grand jury reports were mandated by California statute. It's not an issue of credibility here. And the newspaper article goes back and references the course of the San Bernardino County facility since 1987, I believe, until it's not been corrected. Regarding the extent of the departure, the 9th Circuit in United States v. Zeke has addressed this issue and has cited to Pickey and Maurice. And so the 9th Circuit has addressed the extent of departure and said that there's not a clear objection. If there's just a fiat or a general objection, the extent of departure will not be reviewed. And furthermore, Britain did not decide the issue of pre-sentence confinement. The court refused to review the issue. And it's our position that Ms. Figueroa's career appeal would be the issue of first impression in the 9th Circuit. If there's any more questions, I'll submit, Your Honor. Thank you, Counsel. Case just argued will be submitted. The next case on the calendar for argument is Perez v. INS. Thank you.
judges: Reinhardt, Clifton, Weiner